UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MOLESA BROWN et al.,

                    Plaintiffs,

   -against-

CITY OF NEW YORK, DEPARTMENT OF
EDUCATION, COLLIN WOLFE, AS AIDER
AND ABETTOR,

                    Defendants.

-----------------------------------------------------------x

No. 10 Civ. 6491 (LTS)(RLE)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 JUL 2011

## MEMORANDUM OPINION AND ORDER

      Plaintiffs Molesa Brown, Walter H. Dye, Jr., Atato Ducasse[1] and Victoria Walters (collectively, "Plaintiffs") bring this action against the City of New York, the Department of Education and Collin Wolfe (collectively, "Defendants") asserting claims for discrimination based on their sex and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); and for violation of their rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs also assert claims pursuant to New York state law for intentional infliction of emotional distress. Plaintiff Brown asserts a New York state law claim for assault and battery. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

---

[1] In their Amended Complaint and opposition papers, Plaintiffs alternately spell Plaintiff's name as "Ducasse" and "Ducassi." For the sake of consistency, the Court adopts the "Ducasse" spelling of the name.

Defendants seek dismissal of the Amended Complaint (the "Complaint") in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.[2] The Court has reviewed thoroughly and considered carefully all of the parties' submissions. For the following reasons, the motion to dismiss the Complaint is granted in part.

## BACKGROUND

For the purposes of this Memorandum Opinion, all of the non-conclusory factual allegations of Plaintiffs' Complaint are presumed true.

Plaintiffs Brown, Walters and Dye are employed as teachers at Public School 53 (the "School") in the Bronx, New York City; Plaintiff Ducasse is employed as a teacher's aide at the School and Defendant Wolfe is the principal of the School. (Compl. ¶¶ 3-6, 10.) None of the Plaintiffs is of Jamaican origin. (Id. ¶¶ 11, 26, 49, 73.) In their papers in opposition to the dismissal motion, Plaintiffs allege that Principal Wolfe is of Jamaican origin. (Pls.' Mem. of Law in Opp'n to Defs.' Mot. To Dismiss 2.) Defendant Wolfe "has stated that it was his intention to have teachers and administrators who are of Jamaican origin brought to the school to assume teaching and administrative positions." (Compl. ¶ 11.) The Complaint asserts generally that each Plaintiff "has been discriminated against for this reason," that certain plaintiffs have been subjected to "pattern[s] of hostile and discriminatory acts" that are "[c]onsistent with the aforesaid intention," that Wolfe's conduct toward Plaintiff Walters "w[as] the result of the bias

---

[2] Plaintiffs sought permission to file the Amended Complaint after Defendants moved to dismiss their original complaint on many of the grounds raised in the instant motion. The Court granted Plaintiffs leave to file a final amended complaint and denied the then-pending motion to dismiss without prejudice to renewal as against the amended complaint. (Docket entry no. 12.)

Colin Wolfe had towards [Walters] based on his preference towards persons of Jamaican origin," that Wolfe's conduct toward Plaintiff Dye was "part of a pattern of removing persons that were not of Jamaican origin from the school," and that "[f]or several years, before and leading up to this lawsuit, Plaintiff Walter Dye, Jr., witnesses [sic] the removal, harassment and discrimination of individuals that were not of Jamaican [sic] under the administration of Colin Wolfe." (Id. ¶¶ 11, 12, 26, 27, 48, 49, 50, 71, 72, 73, 74.)

Allegations Concerning Plaintiff Brown

Plaintiff Brown began work at the School in September 2005. (Id. ¶ 9.) In December 2008, Wolfe began to retaliate against Brown because she refused to assume the teaching responsibilities of co-Plaintiff Walters. (Id. ¶ 14.) That month, Wolfe requested that Brown complete a pre-observation form for a formal in-class observation, but never scheduled the observation. (Id. ¶ 15.) Wolfe also launched investigations into students' complaints that Brown had called one student's mother "stupid" and another student a "dumbo." (Id. ¶¶ 16-19.) Brown received disciplinary letters as a result of both investigations, and contends that the investigations were conducted improperly. (Id. ¶¶ 18-19.) Wolfe's "intentions . . . became clear" when, in May 2009, he told Brown that "'all this could have been avoided if you would have had drinks with me,'" and, during a later conversation on an unspecified date, told her that his current partner was advancing quickly and suggested that Brown could, too, were she to be receptive to his advances. (Id. ¶¶ 20, 22.) Brown refused, and in November 2009 Wolfe rejected a portfolio that she submitted, incorrectly asserting that she had failed to submit it in a timely manner. (Id. ¶ 23.) Brown suffers from anxiety and stress, allegedly as a result of Wolfe's conduct. (Id. ¶ 25.) In March 2010, Brown's hand was injured when Assistant Principal Moreno assaulted Brown "when [Moreno] was asked to escort . . . Brown to see the

principal." (Id.)

Allegations Concerning Plaintiff Ducasse

Plaintiff Ducasse has been employed as a teacher's aide at the School since 2007. (Id. ¶ 76.) On February 4, 2010, Wolfe held the first of two meetings with her concerning her son, who attended the School and was allegedly involved in an altercation with another student. (Id. ¶ 77.) Wolfe yelled at Ducasse's son during that meeting and, at a second meeting the next day, threatened to fire Ducasse after Ducasse refused to attend the meeting unless she could be accompanied by another relative. (Id. ¶¶ 78, 80.) On February 9, 2010, Wolfe began to "retaliat[e]" against Ducasse by reducing Ducasse's workload (and thus her income and seniority); on an unspecified date, he falsely charged her with corporally punishing a student; on February 11, 2010, he placed her son in a "safe room" for misbehavior although he had done nothing wrong. (Id. ¶¶ 81-82, 84.) Also on February 11, 2010, Wolfe approached Ducasse and said "'what an Ass' or words to that affect [sic]" and subsequently used additional, unspecified "dirty sexual epithets" against her for an unspecified period of time. (Id. ¶ 83.) The Complaint alleges generally that Ducasse "was unfairly treated and punished for trivial reasons" throughout her employment, and that "[s]he was only being pressured by the defendant Collin Wolfe so that she would consent to his sexual overtures which were becoming more and more aggressive." (Id. ¶ 85.) Ducasse has suffered panic attacks during the course of her employment. (Id. ¶ 86.)

Allegations Concerning Plaintiff Walters

Plaintiff Walters has worked at the School for approximately four years. (Id. ¶ 28.) In September 2008, Wolfe learned that Walters was friendly with an unspecified enemy of Wolfe. (Id. ¶ 29.) After learning of this, Wolfe and Assistant Principal Moreno made more than sixty-two unannounced pop-in visits to Walters's class over the course of one academic

year, yelled at her in the hall of the School, asked co-Plaintiff Brown to take over Walters' class and degraded Walters by calling her "incompetent" in the presence of her co-workers. (Id. ¶¶ 30-37, 39.) Walters filed a grievance against Wolfe for this conduct. After Walters refused to drop the charge at the request of Assistant Principal Moreno, she suffered continued harassment. (Id. ¶ 38.) Although Walters had received satisfactory ratings in the two years preceding Wolfe's discovery of her friendship with his enemy, she received unsatisfactory ratings in the two subsequent years. (Id. ¶ 28.) As a result of the unsatisfactory ratings, Walters has not received a salary increase. (Id. ¶ 47.) After a dispute with Wolfe and Assistant Principal Moreno over whether Walters had been instructed to remove her personal items from a classroom, Walters suffered an anxiety attack. (Id. ¶¶ 41-43.)

Allegations Concerning Plaintiff Dye

Plaintiff Dye, alleging discrimination on the basis of his national origin, has worked at the School since 1987. (Id. ¶ 52.) In December 2008, Wolfe held a meeting with Dye to discuss low test scores in one of his classes. (Id. ¶ 53.) At the meeting, Wolfe threatened to remove Dye from the classroom for his poor performance. (Id. ¶ 54.) In the months following this meeting, Wolfe and/or Assistant Principal Thomas gave Dye five unsatisfactory ratings, had an assistant principal conduct unscheduled pop-in visits of Dye's class and mandated that Dye sit in on an uncertified teacher's class to learn best practices. (Id. ¶¶ 56, 58, 60, 62, 65-67.) In January 2009, one of Dye's colleagues told him that a parent had mentioned that Wolfe was "out to get" Dye and, at unspecified times, Dye's colleagues warned him that Wolfe's alleged pro-Jamaican policy was being implemented directly against him. (Id. ¶¶ 51, 57.) In April 2009, Dye made a report to the Office of Special Investigations that initiated an investigation of Assistant Principal Moreno for corporally punishing a student. (Id. ¶¶ 63-64.) Ms. Moreno

subsequently performed a "hostile and intimidating" pop-in visit to Dye's class, in retaliation for Dye's involvement in the investigation. (Id.) In June 2009, Dye was the target of additional unwarranted criticism by Assistant Principal Thomas, was "singled out" by Wolfe for wearing shorts to school on a non-instructional day, and was involved in an incident in which Wolfe instructed all teachers to leave the school building and "unnecessarily" called security when Dye did not leave quickly enough. (Id. ¶¶ 68-70.)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept as true the non-conclusory factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Iqbal, 129 S. Ct. at 1949. Nevertheless, "[a] pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949. This plausibility standard applies to all civil actions. Id. at 1953.

Plaintiffs' Claims

As their First Cause of Action, Plaintiffs assert that "[a]s a result of the discriminatory practices set forth above, defendants have denied plaintiffs . . . their right to equal employment opportunity in violation of [Title VII] . . . , [and] the Fourteenth Amendmen[t] to the United States Constitution, 42 U.S.C. §§ 1981 and 1983." (Compl. ¶ 87.) For their "Additional Causes of Action," Plaintiffs assert that "[a]ll Plaintiffs have suffered intentional infliction of emotional distress, Plaintiff Brown has been battered and assaulted all to their damage." (Id. ¶ 88.)

The Court construes the Complaint as asserting disparate treatment and hostile work environment claims premised on national origin discrimination (as to all four Plaintiffs), retaliation (as to Plaintiffs Walters, Ducasse and Dye) and sexual harassment (as to Plaintiffs Brown and Ducasse), in addition to state law claims for intentional inflection of emotional distress and for assault and battery.

Claims under Section 1981

It is settled that "Section 1981 does not prohibit discrimination on the basis of gender or . . . national origin." Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) (citing Runyon v. McCrary, 427 U.S. 160, 167 (1976); Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987)). Because Plaintiffs' Complaint concerns only sex and national origin discrimination, the Complaint fails to state a claim for relief under Section 1981. Defendants' motion will therefore be granted insofar as it seeks dismissal of Plaintiff's Section 1981 claims.

Claims under Title VII and Section 1983

*Title VII Claim Against Defendant Wolfe*

Plaintiffs' Complaint asserts claims against Defendant Wolfe "as aider and abettor." It is well-settled law, however, that Title VII does not provide for individual liability. See, e.g., Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010). Plaintiffs' claims against Wolfe are therefore dismissed.

*Standards for Title VII and Section 1983 Employment Discrimination Claims*

Workplace discrimination claims asserting violations of Title VII and the Equal Protection Clause of the Fourteenth Amendment are analyzed under the same standard. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). The following discussion, while focusing on the language and interpretation of Title VII, is thus dispositive of Plaintiffs'

Title VII claims and their Equal Protection claims brought pursuant to Section 1983.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a) (West 2010). In order to establish a prima facie case of disparate treatment in violation of Title VII, a plaintiff must either show direct evidence of discrimination or, if no such direct evidence exists, that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) there were circumstances giving rise to an inference of unlawful discrimination." Cortes v. City of New York, 700 F. Supp. 2d 474, 483 (S.D.N.Y. 2010); see also Ruiz v. County of Rockland, 609 F.3d 486, 492 (2d Cir. 2010).

For the purposes of disparate treatment claims under Title VII, adverse employment actions include discharge, refusal to hire, and acts that impact an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C.A. § 2000e-2(a) (West 2010). To reach the level of an adverse employment action, the employer's conduct must cause a "materially adverse change in the terms and conditions of employment," Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007), and be "more disruptive than a mere inconvenience or an alteration of job responsibilities," Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

To state a claim for hostile work-environment discrimination in violation of Title VII, a plaintiff must "plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively

perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected characteristic].'" La Grande v. DeCrescente Distributing Co., Inc., 370 F. App'x 206, 209 (2d Cir. 2010) (citations omitted). "[F]or liability to attach, the employer must also be responsible for the conduct at issue." Id..

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there existed a causal connection between the protected activity and the adverse action." Id. at 211 (citations omitted).

At the pleading stage, a plaintiff need not allege specific facts establishing a prima facie case of discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002). Rather, "the ordinary rules for assessing the sufficiency of a complaint apply," id. at 511, and thus to state a claim a complaint need only contain a "short and plain statement [of] the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a).

Twombly establishes "a flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (internal quotation marks, citation and emphasis omitted). A plaintiff alleging employment discrimination must plead sufficient facts to give a defendant reasonable notice of the claims against it. Id. at 212-13. "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2)." Iqbal, 129 S. Ct. at 1950 (internal citations omitted).

*Plaintiff Brown's Federal Claims*

The Complaint does not indicate that the disciplinary letters or Wolfe's rejection of Brown's portfolio affected her compensation, the terms of her employment, or her future opportunities. Nor does she allege facts suggesting that filling out a single pre-observation form was particularly burdensome or more than a mere inconvenience. In the absence of any factual allegations that could plausibly be construed to indicate that she suffered a materially adverse employment action, the Complaint does not state a claim for disparate treatment. See Patane, 508 F.3d at 112-13.

Nor do the facts proffered by Brown describe a workplace permeated with discrimination that was either so severe or pervasive that it created a hostile work environment. Wolfe's actions – the investigations, paperwork and deadline squabbles – do not fall outside of the realm of routine employment actions than may be inconvenient, but are not threatening, humiliating, or even adverse such that they would allow the Court to infer the possibility that the School is a hostile work environment for Brown.

The Complaint is also deficient to the extent it asserts a quid pro quo sexual harassment claim on Brown's behalf. Quid pro quo harassment occurs when "a tangible employment action result[s] from a refusal to submit to a supervisor's sexual demands." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998). In such instances, "the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." Id. If, however, a "claim involves only unfulfilled threats, it should be classified as a hostile work environment claim which requires a showing of severe or pervasive conduct." Id. at 754. For a plaintiff to succeed on a quid pro quo claim, she must not only show that a threat was made but also that a "'tangible employment action,' i.e., [ ] an,

'explicit . . . alteration[ ] in the terms or conditions of employment' resulted from her refusal to submit to [the employer's] sexual advances." Schiano v. Quality Payroll Systems, 445 F.3d 597, 604 (2d Cir. 2006) (quoting Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004)).

Brown alleges two instances of sexually suggestive conduct by Wolfe: first, Wolfe's statement that "none of this would have happened" had she gotten drinks with him; and second, his claim that his current partner was doing quite well at the school and that she could, too, if she were to succumb to his desires. Wolfe's comments suggest an element of quid pro quo harassment, given that he links Brown's advancement to sexual favors, but Brown fails to proffer any facts constituting or plausibly supporting an inference that Wolfe effected any tangible employment actions in response to her refusal. Brown alleges only one event that took place after her refusal: Wolfe's rejection of her portfolio for failure to submit it in a timely manner. Even combining Wolfe's rejection of her portfolio with all of Wolfe's other conduct – investigating students' complaints about Brown and asking her to write a pre-observation report – that occurred before any of the suggestive comments were made, the Court cannot find a plausible basis for a determination that any tangible or explicit alteration in the terms of her employment occurred when she refused his sexual advances.

Plaintiff Brown's federal claims must also be dismissed to the extent they are premised on retaliation. To satisfy the "protected activity" element of a Title VII retaliation claim, an employee need only have had a good faith, reasonable belief that she was engaged in conduct opposing an employment practice made unlawful by Title VII, such as utilizing an employer's internal or informal complaint mechanism. See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006); Amin v. Akzo Nobel Chems., Inc., 282 F. App'x 958, 961 (2d Cir. 2008). The Complaint, however, wholly fails to identify any

discrimination or sexual harassment-related complaint or other "protected activity" on the part of Plaintiff Brown.

Accordingly, the Complaint is dismissed to the extent it asserts federal claims on behalf of Plaintiff Brown.

*Plaintiff Dye's Federal Claims*

The Complaint is similarly deficient to the extent it asserts a national origin disparate treatment claim and retaliation claims on behalf of Plaintiff Dye. Plaintiff Dye's allegations of mistreatment are insufficient to provide a basis for a determination that he suffered a material adverse employment action. See Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) ("Negative evaluations can be adverse employment actions only if they give rise to material adverse changes in work conditions."); Figueroa v. City of New York, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) (collecting cases). His allegations of retaliation are not predicated on any identified protected activity relating to employment discrimination.

The Complaint is, however, sufficient to withstand Defendants' dismissal motion insofar as it asserts a hostile work environment claim on Plaintiff Dye's behalf that is premised on national origin discrimination. Although Plaintiffs' allegations of animus are largely conclusory, Plaintiffs' allegations that Wolfe made statements indicating a desire to staff positions with Jamaicans, that Dye was told by others that he was a target of a campaign by Wolfe to rid the school of non-Jamaicans, and that Dye witnessed such discriminatory activity that was inflicted on others suffice, albeit barely, at this pleading stage plausibly to give Defendants notice the basis of Plaintiffs' national origin discrimination claim, as required by Federal Rule of Civil Procedure 8(a)(2). The allegations concerning unfounded reviews and workplace humiliation, while susceptible of various interpretations, are at this stage sufficient

when read in the light most favorable to Dye to state plausibly his claim that he was subjected to a hostile work environment.

*Plaintiff Walters' Federal Claims*

The allegations concerning Plaintiff Walters' mistreatment are sufficient to frame claims of at least one material adverse employment action (unsatisfactory rating that barred a salary increase) and a hostile work environment. The Complaint's allegations of motivation for the actions are not clear, insofar as it asserts specifically that Wolfe's display of hostility toward Walters was triggered by the revelation of her friendship with someone who was Wolfe's enemy but also alleges that Wolfe's actions were the product of animus against non-Jamaicans. The Court construes the Complaint to allege that Wolfe's motives were mixed and finds it sufficient to withstand the dismissal motion with respect to Walters' disparate treatment and hostile work environment claims.

The allegation supporting Walter's retaliation claim is, however, insufficient to sustain that cause of action. The Complaint refers only to a grievance concerning prompted by pop-in class visits, and a pattern of "harassment," but does not identify the grievance as one that specified prohibited discrimination as the motivation for the conduct complained of.

Accordingly, the Complaint will be dismissed insofar as it asserts a retaliation claim on behalf of Plaintiff Walters.

*Plaintiff Ducasse's Federal Claims*

The Complaint's allegations as to Plaintiff Ducasse are insufficient to frame a plausible claim for retaliation under Title VII. The only facts alleged regarding events prior to the allegedly retaliatory reduction of Ducasse's workload and income identify no discrimination-related complaints by Ducasse and, in fact, relate solely to interactions between Ducasse and

Wolfe that related to allegations concerning Ducasse's son's behavior as a student at the School. Retaliation arising from disputes of the sort described in the Complaint is not actionable under Title VII.

Plaintiff Ducasse also alleges that, on one specific occasion in February 2009, Defendant Wolfe said to her "'what an Ass' or words to that [e]ffect," that Wolfe thereafter "continued to use dirty sexual epithets against . . . Ducasse," that she was subjected to a false charge of corporal punishment, and that she was "unfairly treated and punished for trivial reasons" in order to pressure her to "consent to [Wolfe's] sexual overtures." None of these allegations is sufficient to support a plausible claim for prohibited disparate treatment or severe or pervasive conduct rising to the level of a hostile work environment.

Nor are Ducasse's allegations sufficient to frame a viable claim for quid pro quo sexual harassment. Ducasse fails to allege a demand or threat by Wolfe which could constitute a basis for a quid pro quo claim, as this would require a plausible allegation that Wolfe took a tangible employment action against her as a result of her refusal to acquiesce to a sexual demand. The only such action that she cites – Wolfe's decision to reduce her workload – was allegedly prompted by the conflicts regarding her son's alleged behavior and preceded the first alleged incident of sexual harassment.

State Law Claims

State notice of claim requirements and statutes of limitations apply to state law claims brought in federal court. See Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). New York Education Law section 3813 provides that no tort action may be maintained against a school district or one of its employees unless a notice of claim is made and served within ninety days of the accrual of such claim. N.Y. Educ. Law § 3813

(McKinney 2009); see, e.g., TC v. Valley Central School Dist., 09 Civ. 9036 (WWE), 2011 WL 1345181, *20 (S.D.N.Y. March 30, 2011). The New York Education Law also establishes a one-year statute of limitations for workplace discrimination claims. See Amorosi v. South Colonie Independent Cent. School Dist., 9 N.Y.3d 367 (2007).

Plaintiffs' Complaint fails to allege compliance with applicable New York notice of claim requirements, Defendants' motion is accompanied by a declaration attesting to the absence of any relevant notice of claim from the City's records, and Plaintiffs have made no proffer concerning the filing of the requisite notices. Because all of Plaintiffs' state law claims accrued more than one year and ninety days ago, the claims must be dismissed as untimely.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint is denied with respect to Plaintiff Dye's hostile work environment claim based on national origin discrimination and Plaintiff Walters' disparate treatment and hostile work environment claims based on national origin discrimination, and is granted in all other respects.

This Memorandum Opinion and Order resolves docket entry no. 15.

The initial pretrial conference in this case will be held on **Thursday, September 15, 2011, at 2:00 p.m.** The parties must confer and submit their Joint Preliminary Pretrial Statement in advance of the conference in accordance with the Initial Conference Order issued

on September 13, 2010 (docket entry no. 2).

       SO ORDERED.


Dated: New York, New York
      July 11, 2011

                                              LAURA TAYLOR SWAIN
                                              United States District Judge